# Exhibit A

1  R. Rex Parris, Esq. (SBN: 96567)
2  Alexander R. Wheeler, Esq. (SBN: 239541)
   Jason P. Fowler, Esq. (SBN: 239426)
3  Jacob L. Karczewski, Esq. (SBN: 268295)
   R. REX PARRIS LAW FIRM
4  43364 10ᵗʰ Street West
   Lancaster, California 93534
5  Tel: (661) 949-2595 / Fax: (661) 949-7524

6  Attorneys for Plaintiffs

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF RIVERSIDE

10

11  JASON BLACK and RUTH BLACK,        )   Case No.: RIC 1507803
                                       )
12              Plaintiffs,            )   COMPLAINT:
                                       )
13        v.                           )
                                       )   (1) Strict Product Liability (Design Defect);
14                                     )   (2) Strict Product Liability (Failure to
15  MONSTER BEVERAGE                   )       Warn);
    CORPORATION, a Delaware Corporation;)  (3) Negligence (Design, Sale,
16  MONSTER ENERGY COMPANY, a          )       Manufacturing);
    Delaware Corporation; and DOES 1   )   (4) Negligence (Failure to Warn);
17  through 100, Inclusive,            )   (5) Fraudulent Concealment;
                                       )   (6) Breach of Implied Warranties; and
18              Defendants.            )   (7) Loss of Consortium
                                       )
19                                     )   DEMAND FOR JURY TRIAL
20                                     )

21

22

23

24

25

26

27

28

---

COMPLAINT

1    Plaintiffs Jason Black and Ruth Black, by their undersigned counsel, hereby sue

2   Defendants, Monster Beverage Corporation, Monster Energy Company, and DOES 1 through

3   100, inclusive (collectively, "Defendants"), and in support thereof, states as follows:

4                    <u>NATURE OF THE CASE AND PARTIES</u>

5    1.    Defendant Monster Beverage Company ("Monster") developed and sells a cola

6   like beverage that is a formulation of chemicals and flavorings.  It was formulated so that when

7   consumed daily, the consumer will crave more and more of the product.  Monster's target

8   market is children and young adults.  Monster produces a drink that is formulated to increase

9   blood pressure and heart rate; two conditions that Monster knew were similar to those caused

10  by cocaine and amphetamines.  Monster's advertising even promotes drug like effects of their

11  beverage by recommending and stating: **"Pound down three to get the buzz."**

12   2.    After being on the market for a period time, the world's medical community

13  discovered and reported that regular consumption of Monster Energy drinks is causing

14  cardiomyopathy (heart damage), heart attacks and strokes in vulnerable children and young

15  adults.  In spite of these repeated warnings, Monster refuses to conduct testing of the product

16  and continues to market their product to children and young adults.

17   3.    Plaintiff Jason Black is one of the many people who suffered a heart attack after

18  drinking Monster's product over a period of time.  This case is being brought by Plaintiffs to

19  hold Monster accountable for the harm Monster caused to Plaintiff Jason Black.  Plaintiffs

20  bring the instant actions for personal injuries suffered as a result of plaintiff Jason Black's July

21  3, 2013 heart attack, following his ingestion of significant amounts of caffeine and other

22  stimulants through his consumption of MONSTER ENERGY drinks shortly before a serious

23  heart attack.

24   4.    Plaintiffs are residents of the State of Texas.

25   5.    Monster Beverage Corporation is a corporation organized under the laws of the

26  State of Delaware, with its principal place of business located at 1 Monster Way, Corona,

27  California 92879.  At all times pertinent hereto, Defendant Monster Beverage Corporation was

28  engaged in and responsible for the design, manufacture, production, testing, study, inspection,

1   mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of the energy

2   drink named MONSTER ENERGY.   Defendant, Monster Beverage Corporation, may be

3   served with process by service on its registered agent: CSC – Lawyers Incorporating Service,

4   2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

5         6.    Monster Energy Company is a corporation organized under the laws of the State

6   of Delaware, with its principal place of business located at 1 Monster Way, Corona, California

7   92879.  At all times pertinent hereto, Defendant Monster Energy Company was engaged in and

8   responsible for the design, manufacture, production, testing, study, inspection, mixture,

9   labeling, marketing, advertising, sales, promotion, and/or distribution of the energy drink

10  named MONSTER ENERGY.  Defendant, Monster Energy Company, may be served with

11  process by service on its registered agent: CSC – Lawyers Incorporating Service, 2710

12  Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

13        7.    The true names and/or capacities, whether individual, corporate, associate or

14  otherwise, of defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs at this time,

15  who, therefore, sue said defendants by such fictitious names. Plaintiffs are informed and

16  believe, and based thereon allege, that each of the defendants fictitiously named herein as a Doe

17  is legally responsible, negligently or in some other actionable manner, for the events and legal

18  cause of Jason Black's heart attack and the resulting injury and damages to Plaintiffs, as

19  hereinafter alleged.   Plaintiffs will amend this Complaint to assert the true names and/or

20  capacities of such fictitiously named defendants when the same have been ascertained. For

21  convenience, Monster Beverage Corporation, Monster Energy Company, and DOES 1 through

22  100 are sometimes collectively referred to herein as "Monster."

23        8.    Plaintiffs are informed and believe, and based thereon allege, that, at all times

24  mentioned herein, defendants were the agents (ostensible or otherwise), servants, employees

25  successors-in-interest and/or joint venturers of their co-defendants and were, as such, acting

26  within the purpose, course, scope and authority of said agency, employment, successor-in-

27  interest and/or joint venture and that each and every defendant, as aforesaid, was acting as a

28  principle and was negligent in the selection and hiring and retention of each and every

1  defendant as an agent, employee, successor-in-interest and/or joint venture. Each defendant has

2  ratified and approved the acts of their respective agents and employees.

3  ### JURISDICTION AND VENUE

4      9.    Jurisdiction and venue are proper in the Superior Court of California for

5  Riverside County because, at all times relevant hereto, Defendants maintained a principal place

6  of business and were engaged in the design, manufacture, production, testing, study, inspection,

7  mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of the energy

8  drink named MONSTER ENERGY in the State of California and regularly conducted business

9  in the County of Riverside.

10      10.    This is an action for damages that exceeds twenty-five thousand dollars

11  ($25,000.00), the minimum jurisdictional requirement.

12  ### FACTUAL ALLEGATIONS

13      11.    During the morning of July 3, 2013, Plaintiff Jason Black purchased two cans of

14  MONSTER ENERGY (green flavor) at a convenience store. Plaintiff Jason Black consumed

15  the first MONSTER ENERGY drink at or around 6:30 a.m. The can of MONSTER ENERGY

16  contained harmful amounts of caffeine, together with other stimulants such as guarana and

17  taurine. Beginning in or around April 2013, Plaintiff Jason Black regularly and routinely

18  consumed at least two (2) MONSTER ENERGY drinks per day, with total daily consumption

19  of MONSTER ENERGY drinks during this time period ranging from approximately 32 oz. to

20  48 oz. per day.

21      12.    Later that morning, on July 3, 2013, Plaintiff Jason Black was working outside as

22  an operator on a wire truck in mild weather conditions. During a morning break from work at

23  or around 10:30 a.m., Plaintiff Jason Black consumed an entire can of MONSTER ENERGY.

24  Soon thereafter, he washed his hands and felt a sharp pain in his chest, throat, and shoulders.

25  He told his co-workers about this pain, expressing that he felt like he was dying, but he

26  continued working for approximately 60 more minutes. After that, he felt bad enough to stop

27  working entirely. After being advised by a supervisor to take a break, Mr. Black proceeded to

28  search the internet for heart attack symptoms. When he recognized that he was experiencing

1   these symptoms, he headed to the emergency room at a local hospital.

2      13.   At the hospital, Plaintiff Jason Black was immediately treated for a heart attack.

3   He remained in the hospital recovering for several days.

4      14.   At all relevant times, Defendants were responsible for the design, manufacture,

5   production, testing, study, inspection, mixture, labeling, marketing, advertising, sales,

6   promotion, and/or distribution of the MONSTER ENERGY drinks that Plaintiff consumed and

7   from which he suffered a heart attack.

8      15.   MONSTER ENERGY drinks are marketed as products that provide benefits to

9   consumers in the form of "increased energy and stamina, weight loss, and enhanced physical

10  and/or mental performance."  SUBSTANCE ABUSE AND MENTAL HEALTH SERVS. ADMIN.,

11  CENTER FOR BEHAVIORAL HEALTH STATISTICS AND QUALITY, THE DAWN REPORT:

12  EMERGENCY DEPARTMENT VISITS INVOLVING ENERGY DRINKS 2 (NOV. 22, 2011) [hereinafter,

13  the "2011 DAWN REPORT"].

14     16.   In order to provide the marketed benefits, MONSTER ENERGY contains and

15  relies primarily upon massive amounts of caffeine, a substance known for imposing adverse

16  health effects upon consumers.  Committee on Nutrition and the Council on Sports Medicine

17  and Fitness, *Sports Drinks and Energy Drinks for Children and Adolescents: Are They*

18  *Appropriate?*, 127 PEDIATRICS 1183 (2011) [hereinafter, "PEDIATRICS"].  Caffeine affects

19  various organ systems by, *inter alia*, increasing heart rate, blood pressure, speech rate, motor

20  activity, attentiveness, gastric secretion, diuresis, and body temperature. *Id.* at p. 1185. Most

21  importantly, caffeine is known to play a role in triggering arrhythmias or other adverse cardiac

22  events. *Ibid.*; see also Adam J. Burger and Kevin Alford, *Cardiac Arrest in a Young Man*

23  *Following Excess Consumption of Caffeinated "Energy Drinks"*, 190 MED. J. OF AUS. 41, 43

24  (2009) [hereinafter, "*Burger and Alford*"] ("The role of caffeine in triggering arrhythmia is well

25  established."); and John P. Higgins, *et al.*, *Energy Beverages: Content and Safety*, Mayo Clinic

26  Proc., Nov. 2010 at p. 1033, 1034 [hereinafter, "*Higgins*"].

27     17.   In addition to caffeine, MONSTER ENERGY drinks contain guarana and taurine.

28  Guarana is a plant extract that contains caffeine. PEDIATRICS at 1186. Taurine has an effect on

cardiac muscles similar to that of caffeine. *Burger and Alford* at 43.  Studies have shown that the synergistic effect of caffeine, guarana, taurine and/or other like substances can produce significant adverse health effects, including cardiac arrest.   *Higgins* at 1034; *see also* SUBSTANCE ABUSE AND MENTAL HEALTH SERVS. ADMIN., CENTER FOR BEHAVIORAL HEALTH STATISTICS AND QUALITY, THE DAWN REPORT: UPDATE ON EMERGENCY DEPARTMENT VISITS INVOLVING ENERGY DRINKS: A CONTINUING PUBLIC HEALTH CONCERN (JAN. 10, 2013) [hereinafter, the "2013 DAWN REPORT"] ("Research suggests that certain additives may compound the stimulant effects of caffeine.").

18.    In December 2012, Monster dismissed a study by Consumer Reports finding that MONSTER ENERGY had more than 270 milligrams of caffeine in a 24-oz. can, stating that the Company did not at that time disclose caffeine content because "there is no legal or commercial business requirement to do so, and also because our products are complete safe, and **the actual numbers are not meaningful to most consumers**."

19.    For years, Monster successfully avoided meaningful regulation of its product by the U.S. Food and Drug Administration.  By classifying MONSTER ENERGY as a "dietary supplement"—in other words, not a "food"—Monster manufactured its MONSTER ENERGY drinks without any restrictions on caffeine content.   MSNBC.msn.com, *Teen Girl Dies of "Caffeine Toxicity" after Downing 2 Energy Drinks*, http://todayhealth.today.msnbc.msn.com/_news/2012/03/21/10780958-teen-girl-dies-of-caffeine-toxicity-after-downing-2-energy-drinks?lite (last visited April 6, 2015).   However, after recent renewed controversy about the safety of energy drinks sparked, in part, by a separate lawsuit filed against Monster by the parents of a 14-year-old girl who died after consuming two MONSTER ENERGY drinks, Monster announced earlier in 2013 that MONSTER ENERGY products will now be marketed as "beverages" and would, in the future, disclose the caffeine content on the packaging of the dangerous product.  Jacque Wilson, *Monster Energy Adds Caffeine Content to Labels*, http://www.cnn.com/2013/03/21/health/monster-energy-beverages (last visited April 6, 2015).

/ / /

COMPLAINT

20.     Energy drink sales have soared over the last decade, with a reported increase in sales of 240 percent from 2004 to 2009 alone. 2011 DAWN REPORT at 2. Not surprisingly, this spike in energy drink sales coincided with a reported increase in the number of annual emergency room visits due to caffeine overdoses, up from 1,128 in 2005 to 16,055 in 2008. *Id.* at 3. Fifty-six percent of these emergency room visits were made by adolescents and young adults aged 12 to 25. *Ibid.* Specifically, the number of annual emergency room visits involving energy drinks doubled from 10,068 visits in 2007 to 20,783 visits in 2011.   2013 DAWN REPORT at 1-3.

21.     Today, MONSTER ENERGY drinks are part of a dangerous yet still growing array of energy drink products in the marketplace.   2011 DAWN REPORT at 2.   In 2011, MONSTER ENERGY, just one line of Monster's vast collection of energy drink products, accounted for $1.3 billion in revenue, commanding 31.5% market share in convenience-store sales, the primary outlet for MONSTER ENERGY products. Gary M. Stern, *Monster Beverage Courts Young With Unique Ad Tack* (Feb. 24, 2012), http://news.investors.com/article/602190/201202241434/mnst-stirs-buzz-spikes-sales.htm?p=full (last visited April 6, 2015).   In 2012, Monster captured 36.8% of the $10 billion U.S. retail market for energy drinks by volume, the largest percentage of all energy drink manufacturers servicing the U.S. Mike Esterl, *Monster Beverage Under Fire* (May 6, 2013), http://www.wsj.com/articles/SB10001424127887323826804578466780766004340 (last visited April 6, 2015).

22.     MONSTER ENERGY consumption can increase the risk of cardiac injury for a variety of reasons. "Lack of adequate labeling" results in consumption by consumers who may be "completely unaware of the amount of caffeine they are ingesting," because the packaging fails to disclose the caffeine content of the product. Chad J. Reissig, *et al.*, *Caffeinated Energy Drinks: A Growing Problem*, 99(1-3) DRUG ALCOHOL DEPEND. 4 (2009) [hereinafter, "*Reissig*"]. The labeling of the MONSTER ENERGY drinks sold at the time of Plaintiff Jason Black's consumption did nothing to attempt to warn of these severe health risks, as the cans utterly failed to provide adequate information as to the risks associated with consumption.

23.   Despite the well-known health risks associated with excessive consumption of energy drinks, MONSTER ENERGY, was and is heavily marketed towards teenagers and young adults, the individuals most susceptible to caffeine-related injury. *See, e.g.,* 2011 DAWN REPORT at 2 ("Although consumed by a range of age groups, energy drinks are marketed to appeal to youth and are consumed by 30 to 50 percent of children, adolescents, and young adults."); Leah Steinke, *et al., Effect of "Energy Drink" Consumption on Hemodynamic and Electrocardiographic Parameters in Healthy Young Adults,* 43 ANNALS OF PHARMACOTHERAPY 596, 599 (2009) ("Energy drink marketing often employs nontraditional methods of advertising, such as word-of-mouth campaigns on college campuses, to attract teenagers and young adults."); PEDIATRICS at 1182 ("Sports and energy drinks are a large and growing beverage industry now marketed to children and adolescents for a variety of uses."). With names like "Assault," "Khaos" and "Dub Edition" assigned to variations within the MONSTER ENERGY product line, and references in marketing material to "jungle juice," a known concoction of juices and grain alcohol served at college parties, Defendants' efforts to target teenagers and young adults are readily transparent.   Monster Energy, http://www.monsterenergy.com/us/en/products/ (last visited April 6, 2015).

24.   Despite Monster's knowledge of the significant risks associated with consumption of MONSTER ENERGY drinks, particularly with respect to its target audience, Defendants mask and otherwise fail to alert consumers like Plaintiff Jason Black of the significant risks associated with the consumption of MONSTER ENERGY.  To the contrary, MONSTER ENERGY drinks expressly pride themselves as "deliver[ing] twice the buzz of a regular energy drink," and "pack[ing] a vicious punch."

25.   Though championing the benefits provided by MONSTER ENERGY, Defendants entirely failed to warn or disclose to consumers like Plaintiff Jason Black the known risks and side effects of consuming MONSTER ENERGY products, including the risk of an adverse health event, from which Plaintiff Jason Black ultimately suffered a heart attack.

/ / /

/ / /

26.     MONSTER ENERGY marketed its drinks to Plaintiff Jason Black; and in doing so, it overstated the benefits and good qualities of Monster drinks while understating and/or failing to state the risks and dangers associated with energy drinks.

27.     Beyond their failure to warn of or disclose to consumers information related to the significant risks associated with consuming MONSTER ENERGY, Defendants intentionally withheld, suppressed and concealed from consumers information relating to the risks of adverse health effects upon consumption of this product.

28.     Defendants failed to conduct adequate testing, studies or clinical testing and research, and similarly failed to conduct adequate marketing surveillance regarding MONSTER ENERGY's adverse effects upon the cardiovascular health of consumers.

29.     Despite Defendants' representations to the contrary, the MONSTER ENERGY drink consumed by Plaintiff Jason Black was not safe or fit for the use for which it was intended.

30.     Had Defendants properly disclosed and warned of the significant risk of suffering adverse cardiac episodes, including cardiac arrhythmias, due to the consumption of MONSTER ENERGY, a product containing exorbitant levels of caffeine, taurine and guarana, Plaintiff Jason Black would not have consumed the MONSTER ENERGY drink that caused his heart attack.

31.     Defendants' failures in designing, manufacturing, marketing, distributing, warning and/or selling MONSTER ENERGY drinks directly and proximately caused Plaintiff Jason Black to suffer a serious heart attack.

### FIRST CAUSE OF ACTION

**(Strict Liability: Design Defect against all Defendants by Plaintiff)**

32.     Plaintiffs re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

///

33. Defendants manufactured, sold, and supplied MONSTER ENERGY and had significant involvement in distribution including the capability of exercising control over quality.

34. Defendants placed MONSTER ENERGY into the stream of commerce. MONSTER ENERGY was expected to, and did, reach Plaintiff Jason Black without substantial change in its condition. Plaintiff Jason Black consumed MONSTER ENERGY and it caused his heart attack.

35. Plaintiff Jason Black consumed the MONSTER ENERGY drink that caused his heart attack in the way that Defendants intended all MONSTER ENERGY drinks to be used -- he ingested it orally.

36. The MONSTER ENERGY drink that Plaintiff Jason Black consumed, and that caused his heart attack, did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way.

37. At the time the MONSTER ENERGY drink consumed by Plaintiff Jason Black left Defendants' control, it was in a condition not contemplated by her and was unreasonably dangerous and defective. MONSTER ENERGY was at the time of Plaintiff Jason Black's consumption (and remains to this day) dangerous to an extent beyond that which would be contemplated by the ordinary consumer in his position.

38. The risks associated with ingesting MONSTER ENERGY outweigh any claimed or perceived benefits. There are practicable, feasible and safer alternatives to achieve "energy" and increased awareness that do not present the severe health risks that accompany MONSTER ENERGY.

39. The failure of the MONSTER ENERGY drink that Plaintiff Jason Black consumed, and that caused his heart attack, to perform safely was a substantial factor in causing him harm.

40. As a direct and proximate result of Defendants' design, manufacture, marketing, and/or sale of MONSTER ENERGY, Plaintiff Jason Black suffered serious injuries herein described.

41.    As a direct and proximate result of Defendants' design, manufacture, marketing, and/or sale of MONSTER ENERGY, it became necessary for Plaintiff Jason Black to incur expenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services.  Plaintiffs are informed, and thereon allege, that he will incur further medical and incidental expenses for the care and treatment of said injuries, the amount of which is unknown at this time, all to his further damage in an amount according to proof.

42.    As a direct and proximate result of Defendants' design, manufacture, marketing, and/or sale of MONSTER ENERGY, Plaintiff Jason Black suffered serious and permanent physical injury, harm, damages and economic loss.  As a result, Plaintiff Jason Black was prevented from performing his usual occupation, or any occupation whatsoever, or has otherwise suffered a reduction in his capacity to work, and as a result has been damaged in an amount according to proof.  Plaintiffs are informed and believe, and on such information and belief allege, that by reason of said carelessness and negligence of defendants, and each of them, plaintiff will, in the future, be prevented from attending to his usual occupation for an undetermined period of time, or will continue to have a reduced capacity to earn income, all to his further damage in an amount according to proof.

## SECOND CAUSE OF ACTION

### (Strict Liability: Failure to Warn against all Defendants by Plaintiff)

43.    Plaintiffs re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

44.    Prior to Plaintiff Jason Black's consumption of MONSTER ENERGY, Defendants designed, manufactured, marketed, distributed and/or sold MONSTER ENERGY, and at all material times were in the business of doing so.  Defendants placed MONSTER ENERGY into the stream of commerce.  MONSTER ENERGY was expected to, and did, reach Plaintiff Jason Black without substantial change in its condition.  Plaintiff Jason Black

1    consumed MONSTER ENERGY and it caused his heart attack.

2        45.    MONSTER ENERGY had potential risks and side effects that were known or

3    knowable to Defendants by the use of scientific knowledge available at and after the time of

4    design, manufacture, marketing, distribution and/or sale of the MONSTER ENERGY

5    consumed by Plaintiff Jason Black.  Defendants knew or should have known of the defective

6    condition, characteristics, and risks associated with MONSTER ENERGY, as previously set

7    forth herein.

8        46.    The potential risks and side effects associated with MONSTER ENERGY

9    presented, and continue to present, a substantial danger when the drinks are used or misused in

10   an intended or reasonably foreseeable way – *i.e.* ingested orally.

11       47.    Ordinary consumers would not have recognized the potential risks and side

12   effects associated with ingesting MONSTER ENERGY.

13       48.    When placing MONSTER ENERGY into the stream of commerce, Defendants

14   failed to provide adequate warnings as to the risks associated with the product.  Defendants

15   failed to warn consumers of the true risks and dangers – and of the symptoms, scope and

16   severity of the potential side effects of the MONSTER ENERGY drink that Plaintiff Jason

17   Black consumed, such as significantly increased risk of strokes, blood clots, heart attacks and

18   cardiac arrhythmias.

19       49.    As detailed herein, Defendants failed to adequately warn and instruct of the

20   potential risks and side effects associated with ingesting MONSTER ENERGY.  Examples of

21   the inadequacies of Defendants' warnings include, but are not limited to, the following:

22           a.    The warnings were insufficient to alert Plaintiff Jason Black of the

23                 significant risk, scope, duration and severity of adverse events and/or

24                 reactions associated with MONSTER ENERGY, subjecting him to risks

25                 which far exceeded the benefits of MONSTER ENERGY; and

26           b.    Defendants marketed and sold MONSTER ENERGY using misleading

27                 marketing materials emphasizing the efficacy of the drinks while

28                 downplaying the risks associated with it, thereby making the use of

1         MONSTER ENERGY more dangerous than any consumer would

2         reasonably expect.

3      50.   The lack of sufficient instructions or warnings was a substantial factor in causing

4  Plaintiff Jason Black's heart attack.

5      51.   As a direct and proximate result of Defendants' failure to provide adequate

6  warnings in connection with its design, manufacture, marketing, distribution and/or sale of

7  MONSTER ENERGY, Plaintiff Jason Black suffered serious injuries herein described.

8      52.   As a direct and proximate result of Defendants' failure to provide adequate

9  warnings in connection with its design, manufacture, marketing, distribution and/or sale of

10  MONSTER ENERGY, it became necessary for Plaintiff Jason Black to incur expenses for

11  doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically

12  necessary supplies and services.  Plaintiffs are informed, and thereon allege, that he will incur

13  further medical and incidental expenses for the care and treatment of said injuries, the amount

14  of which is unknown at this time, all to his further damage in an amount according to proof.

15      53.   As a direct and proximate result of Defendants' failure to provide adequate

16  warnings in connection with its design, manufacture, marketing, distribution and/or sale of

17  MONSTER ENERGY, Plaintiff Jason Black suffered serious and permanent physical injury,

18  harm, damages and economic loss.  As a result, Plaintiff Jason Black was prevented from

19  performing his usual occupation, or any occupation whatsoever, or has otherwise suffered a

20  reduction in his capacity to work, and as a result has been damaged in an amount according to

21  proof.  Plaintiffs are informed and believe, and on such information and belief allege, that by

22  reason of said carelessness and negligence of defendants, and each of them, plaintiff will, in the

23  future, be prevented from attending to his usual occupation for an undetermined period of time,

24  or will continue to have a reduced capacity to earn income, all to his further damage in an

25  amount according to proof.

26  / / /

27  / / /

28  / / /

## THIRD CAUSE OF ACTION

### (Negligence – Design, Manufacture and Sale against all Defendants by Plaintiff)

54.   Plaintiffs re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

55.   Defendants owed a duty to Plaintiff Jason Black and all consumers of MONSTER ENERGY to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, distribution, promotion and/or sale of MONSTER ENERGY.  This duty required Defendants to ensure that MONSTER ENERGY did not pose an unreasonable risk of bodily harm to Plaintiff and all other consumers, and similarly required Defendants to warn of side effects, risks, dangers and potential for adverse cardiac episodes associated with the ingestion of MONSTER ENERGY.

56.   Defendants failed to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, distribution, promotion and/or sale of MONSTER ENERGY in that Defendants knew or should have known that MONSTER ENERGY could cause significant bodily harm, including cardiac arrhythmia, and was not safe for use by those who ingest the product.

57.   Defendants were negligent in the design, formulation, testing, manufacture, labeling, marketing, distribution, promotion and/or sale of MONSTER ENERGY and breached their duties to Plaintiffs.  Specifically, Defendants:

      a.    Failed to use due care in the preparation and design of MONSTER ENERGY drink to prevent the previously-described risks, especially as they relate to children and young adults;

      b.    Failed to conduct adequate testing of MONSTER ENERGY;

      c.    Failed to cease manufacturing or otherwise alter the composition of MONSTER ENERGY to produce a safer alternative despite the fact that Defendants knew or should have known that such drinks posed a serious risk of bodily harm to consumers;

d.   Failed to conduct post-marketing surveillance to determine the safety of MONSTER ENERGY;

e.   Failed to exercise reasonable care with respect to post-sale warnings and instructions for safe use by consumers;

f.   Failed to exercise ordinary care in the labeling of MONSTER ENERGY; and

g.   Was otherwise careless and negligent.

58.   At all relevant times, it was foreseeable to Defendants that consumers, like Plaintiff Jason Black, would suffer injury as a result of Defendants' failure to exercise ordinary care.

59.   As a direct and proximate result of Defendants' negligence, Plaintiff Jason Black suffered serious injuries herein described.

60.   As a direct and proximate result of Defendants' negligence, it became necessary for Plaintiff Jason Black to incur expenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services.   Plaintiffs are informed, and thereon allege, that he will incur further medical and incidental expenses for the care and treatment of said injuries, the amount of which is unknown at this time, all to his further damage in an amount according to proof.

61.   As a direct and proximate result of Defendants' negligence, Plaintiff Jason Black suffered serious and permanent physical injury, harm, damages and economic loss.  As a result, Plaintiff Jason Black was prevented from performing his usual occupation, or any occupation whatsoever, or has otherwise suffered a reduction in his capacity to work, and as a result has been damaged in an amount according to proof.  Plaintiffs are informed and believe, and on such information and belief allege, that by reason of said carelessness and negligence of defendants, and each of them, plaintiff will, in the future, be prevented from attending to his usual occupation for an undetermined period of time, or will continue to have a reduced capacity to earn income, all to his further damage in an amount according to proof.

/ / /

## FOURTH CAUSE OF ACTION

### (Negligence – Failure to Warn against all Defendants by Plaintiff)

62.     Plaintiffs re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

63.     Prior to, on, and after the date of Plaintiff Jason Black ingestion of MONSTER ENERGY, and at all relevant times, Defendants were engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of MONSTER ENERGY, which were intended for consumption by consumers like Plaintiff Jason Black.

64.     Prior to, on, and after the date of Plaintiff Jason Black's ingestion of MONSTER ENERGY, Defendants knew or should have known that MONSTER ENERGY was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.  Such dangers include, but are not limited to, significantly increased risk of strokes, blood clots, heart attacks and cardiac arrhythmias.

65.     Prior to, on, and after the date of Plaintiff Jason Black's ingestion of MONSTER ENERGY, Defendants knew or should have known that consumers of MONSTER ENERGY, including Plaintiff Jason Black, would not realize the dangers presented by the product.

66.     Prior to, on, and after the date of Plaintiff Jason Black's ingestion of MONSTER ENERGY, Defendants failed to adequately warn of the dangers associated with consumption of MONSTER ENERGY and/or failed to adequately instruct consumers on the safe use of the product. Such failures to warn and/or instruct included, but were not limited to: failing to issue adequate warnings to consumers concerning the risks of serious bodily harm associated with the ingestion of MONSTER ENERGY; failing to supply adequate warnings regarding all potential adverse health effects associated with the use of its product and the comparative severity of these side effects; and failing to set forth adequate warnings directed to consumers with common underlying cardiac conditions that are more susceptible to adverse cardiac reactions.

67. It was foreseeable to Defendants that consumers, including Plaintiff Jason Black, might suffer injury as a result of its failure to exercise ordinary care in providing adequate warnings concerning the dangers associated with consumption of MONSTER ENERGY.

68. As a direct and proximate result of Defendants' negligence, Plaintiff Jason Black suffered serious injuries herein described.

69. As a direct and proximate result of Defendants' negligence, it became necessary for Plaintiff Jason Black to incur expenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services. Plaintiffs are informed, and thereon allege, that he will incur further medical and incidental expenses for the care and treatment of said injuries, the amount of which is unknown at this time, all to his further damage in an amount according to proof.

70. As a direct and proximate result of Defendants' negligence, Plaintiff Jason Black suffered serious and permanent physical injury, harm, damages and economic loss. As a result, Plaintiff Jason Black was prevented from performing his usual occupation, or any occupation whatsoever, or has otherwise suffered a reduction in his capacity to work, and as a result has been damaged in an amount according to proof. Plaintiffs are informed and believe, and on such information and belief allege, that by reason of said carelessness and negligence of defendants, and each of them, plaintiff will, in the future, be prevented from attending to his usual occupation for an undetermined period of time, or will continue to have a reduced capacity to earn income, all to his further damage in an amount according to proof.

## FIFTH CAUSE OF ACTION

### (Fraud: Concealment, Suppression or Omission of Material Facts against all Defendants by Plaintiff)

71. Plaintiffs re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

///

72.   Defendants withheld and suppressed facts in its advertising, labeling, packaging, marketing and promotion of MONSTER ENERGY that led consumers to falsely believe that the product posed no greater risk to the health of those who consumed it than did natural supplements containing similar ingredients.

73.   Due to the potential risks associated with consumption of MONSTER ENERGY, Defendants owed a duty to disclose the truth about the significant adverse health effects associated with the consumption of these drinks, but failed to do so.

74.   Despite Defendants' knowledge of the health risks associated with consumption of energy drinks like MONSTER ENERGY as a result of the high caffeine content, Defendants concealed these dangers and took steps in the advertising, packaging, marketing, promotion and/or sale of MONSTER ENERGY to prevent consumers from learning the true facts about the product.

75.   The concealment of the true facts about MONSTER ENERGY was done with the intent to induce Plaintiff Jason Black to purchase and consume MONSTER ENERGY. Defendants intended for consumers, like Plaintiff Jason Black, to rely on their advertising, labeling, packaging, marketing, promotion and/or sale of MONSTER ENERGY, as well as their suppression of the true facts about the risks and dangers associated with consuming MONSTER ENERGY.

76.   The reliance by Plaintiff Jason Black in consuming MONSTER ENERGY was reasonable and justified in that Defendants appeared to be, and represented themselves to be, reputable businesses that would disclose the truth about any potential harmful health effects of consuming MONSTER ENERGY.

77.   As a direct and proximate result of the fraud and deceit alleged, Plaintiff Jason Black suffered serious injuries herein described.

78.   As a direct and proximate result of the fraud and deceit alleged, it became necessary for Plaintiff Jason Black to incur expenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services. Plaintiffs are informed, and thereon allege, that he will incur further medical and incidental

1   expenses for the care and treatment of said injuries, the amount of which is unknown at this

2   time, all to his further damage in an amount according to proof.

3        79.    As a direct and proximate result of the fraud and deceit alleged, Plaintiff Jason

4   Black suffered serious and permanent physical injury, harm, damages and economic loss. As a

5   result, Plaintiff Jason Black was prevented from performing his usual occupation, or any

6   occupation whatsoever, or has otherwise suffered a reduction in his capacity to work, and as a

7   result has been damaged in an amount according to proof. Plaintiffs are informed and believe,

8   and on such information and belief allege, that by reason of said carelessness and negligence of

9   defendants, and each of them, plaintiff will, in the future, be prevented from attending to his

10  usual occupation for an undetermined period of time, or will continue to have a reduced

11  capacity to earn income, all to his further damage in an amount according to proof.

12

13  **SIXTH CAUSE OF ACTION**

14  **(Breach of Implied Warranties against all Defendants by Plaintiff)**

15

16       80.    Plaintiffs re-allege each and every allegation contained in this Complaint with the

17  same force and effect as if fully set forth herein.

18       81.    Plaintiff Jason Black consumed MONSTER ENERGY, which caused his heart

19  attack.

20       82.    At the time of Plaintiff Jason Black's purchase and consumption of the

21  MONSTER ENERGY product that caused his heart attack, Defendants were in the business of

22  selling MONSTER ENERGY drinks.

23       83.    The MONSTER ENERGY product that Plaintiff Jason Black consumed, and that

24  caused his heart attack and other injuries, was harmful when consumed.

25       84.    The harmful condition of the MONSTER ENERGY product that Plaintiff Jason

26  Black consumed, and that caused his heart attack, would not reasonably be expected by the

27  average consumer.

28  / / /

85.   The MONSTER ENERGY drink was a substantial factor in causing Plaintiff Jason Black's heart attack.

86.   Prior to Plaintiff Jason Black's consumption of MONSTER ENERGY, Defendants impliedly warranted to Plaintiff Jason Black and other consumers that MONSTER ENERGY was of merchantable quality and safe and fit for the use for which it was intended.

87.   Plaintiff Jason Black relied entirely on the expertise, knowledge, skill, judgment, and implied warranty of Defendants in choosing to consume MONSTER ENERGY.

88.   The MONSTER ENERGY drink Plaintiff Jason Black consumed was neither safe for its intended use, nor of merchantable quality, in that it possessed a dangerous mixture of ingredients that, when put to its intended use, caused severe, and permanent injuries to Plaintiff Jason Black.  As such, the MONSTER ENERGY drink was not of the same quality as those energy drinks generally acceptable in the trade and was not fit for the ordinary purposes for which such goods are used.

89.   By selling, delivering and/or distributing the defective MONSTER ENERGY drink to Plaintiff Jason Black, Defendants breached the implied warranty of merchantability and the implied warranty of fitness.

90.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability and the implied warranty of fitness, Plaintiff Jason Black suffered serious injuries herein described.

91.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability and the implied warranty of fitness, it became necessary for Plaintiff Jason Black to incur expenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services.  Plaintiffs are informed, and thereon allege, that he will incur further medical and incidental expenses for the care and treatment of said injuries, the amount of which is unknown at this time, all to his further damage in an amount according to proof.

92.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability and the implied warranty of fitness, Plaintiff Jason Black suffered serious and

1  permanent physical injury, harm, damages and economic loss.  As a result, Plaintiff Jason

2  Black was prevented from performing his usual occupation, or any occupation whatsoever, or

3  has otherwise suffered a reduction in his capacity to work, and as a result has been damaged in

4  an amount according to proof.  Plaintiffs are informed and believe, and on such information and

5  belief allege, that by reason of said carelessness and negligence of defendants, and each of

6  them, plaintiff will, in the future, be prevented from attending to his usual occupation for an

7  undetermined period of time, or will continue to have a reduced capacity to earn income, all to

8  his further damage in an amount according to proof.

9

10                              **SEVENTH CAUSE OF ACTION**

11                          **(Loss of Consortium against all Defendants)**

12

13        93.    Plaintiffs re-allege each and every allegation contained in this Complaint with the

14  same force and effect as if fully set forth herein.

15        94.    At all times herein mentioned, Plaintiffs JASON BLACK and RUTH BLACK

16  were, and are now, married, and they were, and are now, husband and wife.

17        95.    As a substantial and legal result of Defendants' aforementioned conduct, and the

18  injuries received, Plaintiff JASON BLACK has been unable to perform work, services, and

19  duties as a spouse to Plaintiff RUTH BLACK, and will be unable to perform same in the future.

20  By reason thereof, Plaintiff RUTH BLACK has been deprived of, and in the future will be

21  deprived of, Plaintiff JASON BLACK's work, services, duties, companionship and consortium,

22  all to Plaintiff RUTH BLACK's damages in an amount according to proof.

23

24                          **PUNITIVE DAMAGES ALLEGATIONS**

25                          **(Against all Defendants by Plaintiff)**

26

27        96.    Plaintiffs re-allege each and every allegation contained in this Complaint with the

28  same force and effect as if fully set forth herein.

97.   At all relevant times, Defendants knew that MONSTER ENERGY contained dangerous levels of caffeine and other stimulants, and knew the serious health risks to consumers associated with the consumption of MONSTER ENERGY.

98.   With such knowledge and in furtherance of their own financial interests, Defendants willfully, wantonly and maliciously engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of MONSTER ENERGY while simultaneously failing to warn potential consumers if its dangerous propensities, and targeting consumers most vulnerable (including but not limited to, children, teenagers, and young adults) to the known serious health risks associated with the consumption of MONSTER ENERGY.

99.   With such knowledge and in furtherance of their own financial interests, Defendants willfully, wantonly and maliciously, and with conscious disregard for, and indifference to, the health and safety of consumers, including Plaintiff Jason Black, failed and refused to supply adequate warnings and/or information to protect consumers and/or otherwise reduce or eliminate the health risks to consumers associated with the consumption of MONSTER ENERGY.

100.   In addition to such conduct, Defendants have knowingly, intentionally and deliberately marketed MONSTER ENERGY as an "Energy Supplement" so as to avoid limitations imposed upon soft drink and other beverage manufacturers by the U.S. Food and Drug Administration restricting the caffeine content of such soft drinks or beverages. In classifying MONSTER ENERGY as an "Energy Supplement," Monster avoided meaningful regulation by the FDA for many years and used (and continue to use) amounts of caffeine in MONSTER ENERGY that far exceed such regulations imposed upon other beverages.

101.   As a direct and proximate result of such conduct, and because the acts and omissions of Defendants were willful, wanton, malicious, intended and in conscious disregard for, and indifference to, the health and safety of potential consumers, like Plaintiff Jason Black, an award of exemplary or punitive damages is appropriate and necessary to punish Defendants, and to deter Defendants from engaging in such misconduct in the future and to affect

significant change in the way Defendants design, manufacture, market, promote, warn about, distribute and/or sell MONSTER ENERGY.

### PRAYER FOR RELIEF AS TO ALL CLAIMS

WHEREFORE, Plaintiffs pray for judgment against all Defendants for all claims asserted herein as follows:

1. For property damages and medical expenses incurred by Plaintiff Jason Black, according to proof;

2. For general damages, according to proof;

3. For economic losses, according to proof;

4. For punitive damages, as to the First, Second and Fifth Causes of Action against all Defendants, according to proof;

5. All costs of suits;

6. For applicable statutory interest as provided by law; and

7. For such other and further relief as the Court may deem just and proper.

Date: June 30, 2015                       R. REX PARRIS LAW FIRM

                                  By: _____
                                       Jason P. Fowler
                                       Attorneys for Plaintiffs

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues.


Date: June 30, 2015                       R. REX PARRIS LAW FIRM

                                  By: _____
                                       Jason P. Fowler
                                       Attorneys for Plaintiffs

22
COMPLAINT



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jason P. Fowler, Esq. (SBN 239426)<br>R. REX PARRIS LAW FIRM<br>43364 10th Street West<br>Lancaster, California 93534<br><br>TELEPHONE NO.: 661-949-2595     FAX NO.: 661-949-7524<br>ATTORNEY FOR (Name): Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Riverside**
STREET ADDRESS: **4050 Main Street**
MAILING ADDRESS: Same as above
CITY AND ZIP CODE: Riverside, 92501
BRANCH NAME: Historic Courthouse

CASE NAME:   Black v. Monster, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | RIC 1507803 |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [X] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel  e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence          f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive

4. Number of causes of action (specify):  Seven (7)

5. This case [ ] is [X] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:  June 30, 2015

Jason P. Fowler, Esq.
_____          ▶          _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std 3.10 |
|---|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA  92501
www.riverside.courts.ca.gov

NOTICE OF DEPARTMENT ASSIGNMENT
AND CASE MANAGEMENT CONFERENCE (CRC 3.722)

BLACK VS MONSTER BEVERAGE CORPORATION

CASE NO. RIC1507803

This case is assigned to the Honorable Judge Sunshine S Sykes in Department 06 for all purposes.

The  Case Management Conference is scheduled for 12/30/15 at  8:30 in
Department  06.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP section 170.6 shall be filed  in accordance with that section.

Requests for accommodations can be made by submitting Judicial Council form MC-410 no fewer than five court days before the hearing. See California Rules of Court, rule 1.100.

CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding.  In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence.  Such correspondence is deposited in the outgoing mail of the Superior Court.  Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business.  I certify that I served a copy of the foregoing NOTICE on this date, by depositing said copy as stated above.

Court Executive Officer/Clerk

Date: 07/01/15                               by: _____
                                                    ,MARIA M PRECIADO Deputy Clerk

CDACMC
1/28/14

**CERTIFICATE OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I am employed in the office of a member of the bar of this Court at whose direction service was made. My business address is Callahan & Blaine, APLC, 3 Hutton Centre, Ninth Floor, Santa Ana, California 92707.

On October 27, 2015, I served the foregoing document described as:

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441**

**JURY TRIAL DEMANDED**

[X]    **BY FEDERAL EXPRESS:** I deposited such envelopes at Santa Ana, California for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Federal Express. They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

[]     **BY ELECTRONIC MAIL:** I electronically filed such document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet as listed below.

R. Rex Parris, Esq.
Alexander R. Wheeler, Esq.
Jason P. Fowler, Esq.
Jacob L. Karczewski, Esq.
**R.REX PARRIS LAW FIRM**
43364 10th Street West
Lancaster, CA 93534
Tel: (661) 949-2595
Fax: (661) 949-7524
*Attorneys for Plaintiff*

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed on October 27, 2015 at Santa Ana, California.

Monique Kingsbury